

**IT IS ORDERED as set forth below:**

**Date: October 4, 2021**

_Paul W Bonapfel_
_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| SHERRIE RENEA SEALOCK, | : | |
| Debtor. | : | Case No. 20-41137-pwb |
| | : | |
| SHERRIE RENEA SEALOCK, | : | |
| Plaintiff, | : | Adversary Proceeding |
| v. | : | No. 20-4024-pwb |
| | : | |
| CHRISTOPHER B. JACKSON, ESQ. and | : | |
| ELINOR H. PORTIVENT, ESQ., | : | |
| Defendant | : | |
| | : | |
| SHERRIE RENEA SEALOCK, | : | |
| Objector, | : | |
| v. | : | Contested Matter |
| | : | |
| McRAE, SMITH, PEAK, HARMAN & | : | |
| MONROE, | : | |
| Claimant. | : | |

# ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The dispute in these proceedings is whether an award of attorney's fees against the Chapter 13 debtor, Sherrie Renea Sealock,[1] in a custody modification action is "in the nature of alimony, maintenance and support" such that it is a "domestic support obligation" ("DSO") as defined in 11 U.S.C. § 104(14A). Ms. Sealock contends that the award is not in the nature of support because the domestic court awarded the fees based on her conduct in the custody proceeding rather than on the financial circumstances of the parties.

Ms. Sealock and Seth Adams are the unmarried parents of a minor child. In a child custody modification action that Mr. Adams filed against Ms. Sealock that resulted in a change of primary physical custody to Mr. Adams, the Superior Court ordered that Ms. Sealock pay $10,000 in attorney's fees to the attorney for Mr. Adams, Christopher R. Jackson.

If the award is a DSO, the award is excepted from discharge under 11 U.S.C. § 523(a)(5),[2] and it is a priority claim under 11 U.S.C. § 507(a)(1).

---

[1] Ms. Sealock's Chapter 13 petition identifies her as "Sherrie Renea Sealock." Her petition also states that she has used "Sherrie Renea Dowdy" as her name within the past eight years. The record in this Court includes a partial transcript of a hearing in the Superior Court and its Final Order, which identify her as "Sherrie Sealock Dowdy" or "Ms. Dowdy." The Court uses her name as stated in her petition.

[2] In a Chapter 13 case, a debt that is a domestic support obligation excepted from discharge under § 523(a)(5) is excepted from discharge regardless of whether the debtor receives a so-called "completion discharge" upon completion of all plan payments, 11 U.S.C. § 1328(a), or a so-called "hardship discharge," which a debtor may receive under § 1328(b) under certain circumstances even if the debtor does not complete payments. § 1328(c).

If the debt for attorney's fees is not excepted from discharge under § 523(a)(5), it may be excepted from discharge under § 523(a)(15). A debt excepted under § 523(a)(15),

Contending that it is not a DSO, Ms. Sealock seeks a determination in the adversary proceeding that it is not excepted from discharge (20-4024 Doc. No. 1). She also objected to the proof of claim for the fees (Proof of Claim No. 15)[3] on the ground that it is not entitled to the priority it asserts under § 507(a)(1). (20-41137 Doc. No. 20).[4]

At the hearing initially scheduled on the objection to the proof of claim, this Court directed that the objection be determined in connection with the adversary proceeding because the dispositive issue for both is whether the award is "in the nature of alimony, maintenance or support," as the definition of a DSO in § 101(14A) requires. (20-41137 Doc. No. 26).

Both parties have filed motions for summary judgment.[5] For reasons set forth below, the Court concludes based on the undisputed facts that Ms. Sealock's

---

however, is not excepted from a completion discharge under § 1328(a). A debt excepted from discharge under § 523(a)(15) is excepted from a hardship discharge because a hardship discharge is subject to all exceptions in § 523(a) under § 1328(c).

[3] The claim was filed by Mr. Jackson's law firm, McRae, Smith, Peak, Harman & Monroe, LLP, but the adversary proceeding was filed against Mr. Jackson individually. The parties are not concerned about the discrepancy, and neither is the Court. For purposes of clarity, this Order considers Mr. Jackson and the law firm as the same party.

[4] The Superior Court also ordered that Ms. Sealock and Mr. Adams each pay one-half of the $5,000 in fees awarded to Elinor H. Portivent, the court-appointed guardian ad litem for their child. Ms. Portivent filed Proof of Claim No. 14 for $2,500 as a nonpriority claim. The adversary proceeding also seeks a determination that Ms. Portivent's claim is dischargeable because it is not a domestic support obligation, but Ms. Portivent has not been served. This Order, therefore, deals only with the award of attorney's fees.

[5] On April 7, 2020, Mr. Jackson filed a Motion for Summary Judgment (20-4024 Doc. No. 6), Brief in support of the motion (20-4024 Doc. No. 7), and a Statement of Undisputed Facts. (20-4024 Doc. No. 8). The documents were originally filed in the main case, No. 20-41137, Doc. Nos. 31, 32, and 33.

On April 27, 2021, Ms. Sealock filed a Motion for Summary Judgment that also responded to Mr. Jackson's motion (20-4024 Doc. No. 5, Part 1 [ECF 5]). Attached to Ms.

obligation for attorney's fees is a domestic support obligation within the meaning of

11 U.S.C. § 101(14A) as a matter of law.  Accordingly, the Court will enter summary

judgment determining that the debt is excepted from discharge under § 523(a)(5) and

that is entitled to priority under § 507(a)(1).

## I.  BACKGROUND

The facts are set forth in the parties' statements of undisputed fact[6] (hereinafter

"SUMF") and in the partial transcript of the final hearing in the custody proceeding

(hereinafter "Tr.").[7]

Ms. Sealock and Mr. Adams are the unmarried parents of a minor child.  After

their separation, Ms. Sealock was originally the primary custodian, and Mr. Adams

paid child support to Ms. Sealock.  (Tr. 19, 22, 24).

---

Sealock's motion are a Brief (20-4024, Doc. No. 5, Part 2 [ECF 5-1], and Statement of
Undisputed Material Facts (20-4024 Doc. No. 5, Part 3 [ECF 5-2]).
    Ms. Sealock's papers have an earlier docket number in No. 20-4024 because the
docketing of Mr. Jackson's papers in No. 20-4024 occurred after the docketing of Ms.
Sealock's.
[6] Each party filed a statement of undisputed facts, which BLR 7056-(1)(a) requires when a
party moves for summary judgment.  Jackson's SUMF (20-4024 Doc. No. 8); Sealock's
SUMF (20-4024 Doc. No. 5, Part 3 [ECF 5-2]).
    Neither party filed a response that disputed the other's statement.  Under BLR
7056-(1)(b), any facts that a party responding to a motion for summary judgment does not
dispute in a separate statement accompanying its response to the summary judgment motion
are deemed admitted.
    Although the parties in their statements view the facts differently and draw competing
conclusions from them, their factual statements show no controversy about what happened
that is material to the legal issue in this proceeding.  The Court, therefore, sets forth the facts
based on both of their statements.
[7] The partial transcript is attached as Exhibit "B" to the Jackson SUMF.  (20-4024 Doc. No.
8 at 9-50 [ECF 8]).  Exhibit B is separately docketed in No. 20-41137 Doc. No. 33 Part 1
[ECF 33-2].

Around 2016, Ms. Sealock accused Mr. Adams of wrongdoing, which resulted in a criminal investigation, and requested a temporary protective order. (Tr. 17-20; Jackson SUMF ¶¶ 2-3). Investigation by Elinor Portivent, the court-appointed guardian ad litem, and by Dr. Hudson, a professional who provided counseling for the child,[8] determined that no wrongdoing had occurred. (Tr. 18; Jackson SUMF ¶¶ 2-3). Ms. Sealock had fabricated her allegations and coached or encouraged the child to support them. (Tr. 18, 40; Jackson SUMF ¶¶ 2,3).

In response to the accusations, Mr. Adams filed a proceeding for modification of custody in the Superior Court of Floyd County, Georgia on August 2, 2017. (Tr. 18). The details of the proceedings are not in the record, but it is clear that the dispute was contentious, difficult, and lengthy.

Mr. Jackson represented Mr. Adams in connection with the criminal investigation, the temporary protective order proceeding, and the custody modification matter. Mr. Frank H. Jones represented Ms. Sealock.

The Superior Court conducted a final hearing in the custody matter on February 24, 2020. Ms. Sealock and Mr. Adams agreed that they would have joint legal custody with Mr. Adams having primary custody. (Tr. 25). The judge resolved disputed issues concerning visitation and the parenting plan (Tr. 26-37) and the calculation of child support. (Tr. 37-38).

---

[8] See Final Order at 4 ("The minor child will continue to see Dr. Hudson on a monthly basis and/or as recommended by Dr. Hudson and both parties will participate as recommended by Dr. Hudson."); see also Tr. 26, line 21; 27, line 20; 28, line 11; 29, line 11 (judge's references to Dr. Hudson's testimony regarding visitation).

The judge awarded compensation of $5,000 to the guardian ad litem for her services, requiring each party to pay one-half, and ordered that Ms. Sealock pay $10,000 to Mr. Jackson of the $22,860 in fees he said he had incurred. (Tr.39-40).

On April 23, 2020, the Superior Court entered its Final Order, which Mr. Jackson had prepared and which Ms. Sealock's attorney and Ms. Portivent had reviewed and approved.

## II. ISSUES PRESENTED

Mr. Jackson contends that the fees are in the nature of support because the fee award functioned as support. He argues that the Superior Court weighed the relative financial positions of the parties, determined that Ms. Sealock was in a superior financial position, and awarded the fees as support. Further, he continues, the fees are in the nature of support because they take on the nature of the proceeding, which dealt with issues of child support, custody, and visitation.

Ms. Sealock has a contrary view. Her premise is that the Superior Court ordered her to pay the fees based on her conduct in the custody proceeding and did not consider the financial condition of the parties.

Ms. Sealock's legal position is that an obligation to pay attorney's fees imposed in a custody dispute is "in the nature of" support, and therefore a domestic support obligation, only if the domestic court awarded the fees based on consideration of the financial circumstances of the parties. Because the Georgia law applicable in this situation, O.C.G.A. § 19-9-3(g), does not require such consideration and the Superior Court awarded the fees based on her conduct, she concludes, the debt does

6

not meet an essential element of the definition of a domestic support obligation.  In her view, the fee award is in the nature of a sanction, not in the nature of support.

Ms. Sealock primarily relies on the Eleventh Circuit's decision in *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444 (11th Cir. 1996), and the rulings of Judge Baisier in two cases in this District, *O'Brien v. Skubic (In re O'Brien),* 574 B.R. 369 (Bankr. N.D. Ga. 2017), and *Mosely v. Mosely (In re Mosely),* 577 B.R. 419 (Bankr. N.D. Ga. 2017).

The parties' disagreement about the Superior Court's reasoning and ruling does not raise a factual dispute.  Rather, its resolution requires a legal analysis of the award of attorney's fees as set forth in the Superior Court's Final Order in the context of the presentations of the parties at the final hearing and the judge's oral announcement of rulings at that hearing.  Part III sets out what happened at the hearing, the material details of the judge's oral ruling, and the language of the Final Order.

Part IV addresses the legal dispute over the requirements for an award of attorney's fees in a custody modification proceeding to qualify as a domestic support obligation within the meaning of 11 U.S.C. § 101(14A).

Part V then analyzes the Superior Court's ruling in accordance with the legal conclusions in Part IV.

## III.  PROCEEDINGS IN THE SUPERIOR
## COURT AND ITS RULING

The record in this proceeding includes a partial transcript of the Final

Hearing before the Superior Court on February 27, 2020 (hereinafter "Tr."),[9]

and its Final Order entered on April 23, 2020.[10]

This Part sets out the arguments of the parties at the final hearing (III(A)),

the judge's oral ruling at the end of it (III(B)), and the material language of the

Final Order (III(C)).

**A.  Argument of the Parties at the Final Hearing**

The partial transcript begins with arguments concerning issues in dispute.

The Superior Court had earlier heard testimony concerning the parenting plan

and the calculation of child support, which were the only disputed issues

remaining for resolution other than the fees of Mr. Jackson and the guardian ad

litem, Elinor Portivent.  (Tr. 39).  During the argument, the judge admitted the

Child Support Worksheets prepared by both parties and heard statements from

counsel and Ms. Portivent concerning the fees.

The parties first presented their arguments about the amount of child

support that Ms. Sealock would pay.  Each side introduced their Child Support

---

[9] The partial transcript is attached as Exhibit "B" to the Jackson SUMF.  (20-4024 Doc. No. 8 at 9-50).  Exhibit B is separately docketed in No. 20-41137 Doc. No. 33 Part 1 [ECF 33-2].
[10] A complete copy of the Final Order (with redactions) is attached as Exhibit "A" to the Sealock SUMF.  (20-4024 Doc. No. 5, Part 3 [ECF 5-2], at 6-26).  Attached to the Final Order are the Parenting Plan and a copy of the Child Support Worksheet submitted by Mr. Jackson on behalf of Mr. Adams.

Worksheets, stipulated to the numbers in them, and argued their positions as to how the Superior Court should apply them based on their different assessments of their financial and family situations. (Tr. 1-14). It appears that Mr. Adams sought child support of $645 per month (Tr. 8) whereas Ms. Sealock proposed to pay $546. (Tr. 9).

The parties then made their arguments on attorney's fees and the fees of the guardian ad litem.

Mr. Jackson explained that his representation of Mr. Adams started with the criminal investigation and continued with work in the proceeding for a temporary protective order. His request, he continued, excluded attorney's fees for any of that work. (Tr. 17-18).

Mr. Jackson calculated that his fee for 152.4 hours of work solely related to the modification action from its filing in 2017 to January 2020 at $150 per hour was $ 22,860. (Tr. 18). His hourly rate for Mr. Adams did not change although his hourly rate had gone up by $100 since the beginning of the representation. (Tr. 17). He did not request a specific amount but asked for a "reasonable award of attorney's fees." (Tr. 18).

Mr. Jackson stated that the representation had been "unbelievably difficult" for four years, of which three had been in the modification action. He noted that Mr. Adams had filed the modification action because of allegations of a criminal nature that, based on the guardian ad litem's 52-page report and the

9

services of Dr. Hudson,[11] "were determined not only to be untrue but to be a fabrication of [Ms. Sealock], who coached or encouraged [the child] to make those statements." (Tr. 18-19).

Mr. Jackson observed that Mr. Adams had paid attorney's fees for the modification proceeding in an amount essentially equal to a year's salary and more than a year's salary for all of the attorney's fees, including those for the other matters. (Tr. 19).

With regard to the guardian ad litem fees, Mr. Jackson argued that Mr. Adams should not bear the brunt of those fees because Mr. Adams came into the proceeding "with clean hands and a clean heart about what he was seeking, which was the best interest of [the child]." (Tr. 20).

Ms. Sealock's attorney (Mr. Jones) did not dispute Mr. Jackson's proffer. He described the situation this way (Tr. 21-22):

> [W]hat I'm looking at is a case where both parties have suffered through this process immensely, and I don't know that you can say it's 100 percent this person's fault or that person's fault. I think there's a sufficient claim on both sides for the Court to divide in some manner or allocate attorney's fees, should the Court be inclined to do that. To award attorney's fees in that amount to either party would put them in a position where they're probably unable to take care of the best interest of [the

---

[11] Dr. Hudson is a professional who counselled the child. See *supra* note 8.

child], her financial obligations.  So I'm asking the Court to take that into

consideration.

Mr. Jones continued (Tr. at 22):

I reduced my hourly rate quite a bit.  Neither one of them can afford

either one of us. . . .  I think [Mr. Jackson] and I both tried to meet and

use the time wisely rather than to run up bills.  And some cases are just

done for free sometimes.  They're pro bono.  Some of the parties will just

not be able to pay.  In a situation like this, you see the incomes, and we're

asking you to take that into consideration.

With regard to the guardian ad litem's fees, Mr. Jones stated that he had

no objection to her request for $5,000 and asked the court "to take into

consideration how to allocate that."  (Tr. 23).

The guardian ad litem confirmed that she requested only $5,000, noting

that the total fee for her time would be $15,000 to $20,000.  (Tr. 23).  Mr.

Jackson made no argument regarding the requested amount.

## B.  The Judge's Oral Ruling

By the time the Superior Court began its oral ruling, the parties had agreed that

they would have joint legal custody of their child and that Mr. Adams would have

primary physical custody.  (Tr. 25).  The issues remaining for determination were the

amount of child support, a parenting plan for visitation and other matters, Mr.

Jackson's attorney's fees, and the fees of the guardian ad litem.  (Tr. 25).

11

The judge began the ruling by addressing the parties: "I just want to tell y'all, first of all, what a wonderful [child] that you have. . . ." (Tr. 24). The judge continued (Tr. at 24-25):

And this has nothing to do with the order that I – that I'm going to enter, but I have to tell you that – and I've told you this before, but your [child] has really suffered through this with you both, and [the child] loves you both very, very much and – and [the child] has been torn between the two of you. So I just ask you – from today forward if you would please keep [the child's] best interest at heart and put aside your differences for one another . . . . Just try to set aside your differences in the best interest of your [child] because the way you treat one another has a direct effect on [the child] and [the child's] ability to have relationships, really, for the rest of [the child's] life. So it's important. It's the most important thing.

After confirming that the parties had agreed to continue joint legal custody with primary physical custody with Mr. Adams (Tr. 25), the judge discussed the terms of the parenting plan with the attorneys and parties and resolved remaining issues, paying careful attention to the interests of the child. (Tr. 26-37).

The judge then turned to child support. The judge ruled that each party was entitled to a discretionary adjustment for other qualified children in their homes and that the amount of child support should be based on Mr. Adams's income as set forth in the Child Support Worksheet he submitted. (Tr. 37-38).

12

The judge explained the choice of a lower number (Tr. 38):

> And, like I said before, each of you has other children in the home, and this
> Court doesn't want to set anybody up to fail and to not be able to meet
> obligations and not be able to support your family, so I believe that's the fair
> thing to do in that case.

The judge directed the attorneys to calculate the appropriate number
under the child support guidelines based on those determinations for inclusion in
a final order.  (Tr. 39).  The amount as thus calculated was $579 per month.
(Sealock SUMF ¶ 7).

With regard to fees, the judge began by noting, "And I'll just tell you, it's
– this is very – it's difficult."  (Tr. 39).  The judge continued (Tr. 39):

> It's been a long process.  And, to be quite frank, I don't – I don't have –
> in determining reasonableness, you know, it's a difficult thing.  And,
> again, I don't want to set people up to fail, but there's been a lot of
> litigation.  And it – and it really all started with an allegation that was just
> such an unfortunate event that led to a whole lot of litigation in this case.
>
> And I do think, though, an award of attorney's fees – under
> 19-9-3(g) is warranted in this case.  And certainly guardian ad litem fees
> are warranted in this case under that same statute.

The judge awarded a $5,000 fee to the guardian ad litem and ordered
each party to pay half.  (Tr. 39-40).

With regard to Mr. Jackson's attorneys' fee, the judge explained (Tr. 40):

13

This Court is very aware that, according to Dr. Hudson's testimony, [the child] was encouraged, coached, whatever you want to call it, by mom and, you know, although it was a very, very bad decision to do that – it's like I told [the child] in chambers, sometimes people make bad decisions actually out of love for the child.  They don't realize what they're doing is wrong and how big of a mess they're making at the time, but it sure did make a mess in this case.

And so under 19-9-3(g) I will award attorney's fees to Mr. Jackson in the amount of $ 10,000.  And that's less than half of what he has incurred . . . actually, much less than that because he did not increase his hourly rate during this process.

## C.  The Judge's Final Order

On April 23, 2020, the Superior Court entered its Final Order that incorporated and implemented the rulings at the final hearing.[12]  Mr. Jackson prepared and submitted it.  Both Mr. Jones and the guardian ad litem reviewed and approved it.

The Final Order awarded $5,000 in fees to the guardian ad litem pursuant to O.C.G.A. § 19-9-3(g) for her services.  It did not recite any reason for the allocation.  Although the judge at the hearing did not state a time for payment of

---

[12] A complete copy of the Final Order (with redactions) is attached as Exhibit "A" to the Sealock SUMF.  (20-4024 Doc. No. 5, Part 3 [ECF 5-2], at 6-26).  Attached to the Final Order are the Parenting Plan and a copy of the Child Support Worksheet submitted by Mr. Jackson on behalf of Mr. Adams.

the fees, the written order required payment within 90 days.  (Final Order at 2-3).

> With regard to attorney's fees, the Final Order states (Final Order at 3):

>> The Court hereby finds that pursuant to O.C.G.A. § 19-9-3(g), the award of attorney's fees to Counsel for [Mr. Adams] to be paid by [Ms. Sealock] is appropriate based on the conduct of [Ms. Sealock] in this case.

> The Final Order found that Mr. Jackson's hourly rate and hours billed in the modification action were reasonable and awarded $10,000 to Mr. Jackson. Again, although the judge at the hearing did not establish a schedule for payment of the fee, the Final Order ordered that Ms. Sealock pay it within 180 days.  (Final Order at 3).

> Ms. Sealock filed her Chapter 13 case without paying any of the fees. She seeks confirmation of a Chapter 13 plan that, as modified, provides for payment of the fees in full if the Court determines that they are domestic support obligations entitled to priority under § 507(a)(1).  (20-41137 Doc. No. 40, §§ 4.4, 8.1).

# IV.  Determination of Whether a Debt
# Is a Domestic Support Obligation

Whether the debt for attorney's fees is excepted from discharge under 11 U.S.C. § 523(a)(5) and whether it is a priority claim under 11 U.S.C. § 507a)(1) both depend on whether it is a "domestic support obligation."

## A.  Definition of a Domestic Support Obligation in General

Section 101(14A) defines a "domestic support obligation" ("DSO").  The material part of the definition here is that a DSO is a debt that is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is so designated."[13]

---

[13] 11 U.S.C. § 101(14A)(B).  The debt here clearly meets two of the other three elements of the statutory definition.  It was established by an order of a court of record, § 101(14A)(C)(ii), and it has not been assigned to a nongovernmental entity. § 101(14A)(D).

Paragraph (A) of § 101(14A) states the remaining requirement.  The debt must be owed to or recoverable by a "spouse, former spouse, or child of the debtor or such debtor's legal guardian, or responsible relative."  Here it is Mr. Jackson, not Mr. Adams, who has filed the claim and is asserting that it is a domestic support obligation.  The parties have not raised this issue.

As Mr. Jackson noted to the Superior Court, Mr. Adams owes the money if Ms. Sealock does not pay.  Because Mr. Adams thus has liability for what Ms. Sealock must pay, her debt is effectively owed to or recoverable by Mr. Adams.  Courts have recognized that a fee award that is specifically recoverable by an attorney for a party arising out of domestic relations litigation may qualify as a domestic support obligation. *Davis, Matthews & Quigley, P.C. v. Elhag (In re Elhag)*, 606 B.R. 500, 505 n.6 (Bankr. N.D. Ga. 2019) (Cavender, J.) (collecting cases).

A support obligation payable to a parent qualifies as a domestic support obligation even if the parents are not married.  *See Rugiero v. DiNardo (In re Rugiero),* 502 Fed.Appx. 436, 439 (6th Cir. 2012) ("Nothing in the statute requires the 'child's parent' to be married at the time of the award or indeed ever to have been married to the other parent. It thus matters not that [the parties] never married. What matters is that they had two children."); *In re Elkin,* 2012 WL 5844970 at * 3 (Bankr. S.D. Fla. 2012).

Distinguishing between what is a DSO and what is not is a question of federal bankruptcy law, although state law may provide guidance in determining whether an obligation is "in the nature of" support.[14]

The Eleventh Circuit has instructed that determination of whether a debt is in the nature of support requires the bankruptcy court to determine "nothing more than whether the support label accurately reflects that the obligation at issue is 'actually in the nature of alimony, maintenance, or support.'" *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 446 (11th Cir. 1996) (quoting *Harrell v. Harrell (In re Harrell)*, 754 F.2d 902, 904-05 (11th Cir.1985)). "This inquiry will usually take the form of deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement." *Harrell v. Harrell (In re Harrell),* 754 F.2d 902, 907 (11th Cir. 1985).

The issue typically arises when the question is whether the obligation is for support or part of the equitable distribution of property between the parties. The disputed obligation may involve a requirement that one party pay the other

---

[14] *E.g., Cummings. v. Cummings (In re Cummings),* 244 F.3d 1263, 1265 (11th Cir. 2001); *Strickland v. Shannon (In re Strickland),* 90 F.3d 444 (11th Cir. 1996); *Harrell v. Harrell (In re Harrell),* 754 F.2d 902, 904-05 (11th Cir. 1985).

These and other cases decided prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") address the issue under the language of former 11 U.S.C. § 523(a)(5), which effectively provided that a debt was excepted from discharge only if it was "actually in the nature of alimony, maintenance, or support." BAPCPA amended § 523(a)(5) to provide simply that a debt is excepted from discharge if it is a "domestic support obligation" and defined "domestic support obligation" in a new section, § 101(14A). The restructuring of the statute does not change the analysis of what types of debts are excepted under § 523(a)(5). *See* W. HOMER DRAKE, JR., ET AL., CHAPTER 13 PRACTICE AND PROCEDURE § 6:14.

a fixed sum, sometimes in installments, to allocate assets equitably.  An

equitable adjustment may also occur by requiring one party to assume and pay

specified debts.

In such circumstances, courts have identified a number of factors for a

bankruptcy court to consider in determining whether the obligation is in the

nature of support.  These include:  (1)  the language of the agreement or order;

(2) the financial positions of the parties when the agreement was made or the

order was entered; (3) whether the obligation ends on death or remarriage

(indicating that it is support); (4) whether the obligation is payable in a lump

sum (indicating a property division) rather than in installments (indicating

support); (5) whether it is non-modifiable (indicating a property division); and

(6) other provisions of the agreement or order that separately award child

support or alimony (indicating a property division).[15]  The focus is on the intent

of the parties, in the case of an agreement, or of the court, in the case of an

order.[16]

Such factors are not material in a dispute involving an obligation arising

out of a proceeding to change custody and to determine the related amount of

child support the previous primary custodian must then pay to the new primary

---

[15] *E.g., Benson v. Benson (In re Benson)*, 444 Fed.Appx. 650, 651 (11th Cir. 2011);
*Cummings. v. Cummings (In re Cummings),* 244 F.3d 1263, 1265 (11th Cir. 2001).  *See
generally* W. HOMER DRAKE, JR., ET AL., CHAPTER 13 PRACTICE AND PROCEDURE § 6:14 at
595-96.
[16] *E.g., Cummings. v. Cummings (In re Cummings),* 244 F.3d 1263, 1265 (11th Cir. 2001)
("[T]he touchstone for dischargeability under § 523(a)(5) is the intent of the parties.").

custodian.[17]  Such a proceeding does not involve equitable distribution of property, so the factors that are useful in distinguishing an obligation "in the nature of" support from one that equitably adjusts the assets and debts of the parties are not applicable.

## B.  Attorney's Fees In Custody Proceedings as a Domestic Support Obligation in General

The general rule is that an award of an attorney's fee in a custody proceeding is in the nature of support because determination of custody is essential to the welfare of the child.[18]

Chief Judge Hagenau summarized the general rule in *Simpson v. Carter (In re Carter)*, 2021 WL 2582505 (Bankr. N.D. Ga. 2021).  In granting default judgment against the debtor in an action to determine that attorney's fees awarded against the debtor in a child custody proceeding were excepted from discharge, Judge Hagenau explained, *id.* at *2 (citations and internal punctuation omitted):

> The concept of "support" as applied to a child is not limited to financial support but includes any efforts made on the part of a party for the child's benefit, welfare, and support.  Thus, it is generally accepted that fees incurred on behalf of a child, during proceedings that affect the welfare of

---

[17] *Cf. In re Beacham,* 520 B.R. 561 (Bankr. S.D. Tex. 2014).

[18] *E.g., Jones v. Jones (In re Jones),* 9 F.3d 878 (10th Cir. 1993); *Dvorak v. Carlson (In re Dvorak),* 986 F.2d 940, 941 (5th Cir. 1993); *In re Ramirez,* 2000 WL 356314, at *5 (Bankr. N.D. Ill. 2000); *Holtz v. Poe (In re Poe),* 118 B.R. 809, 812 (Bankr. N.D. Okla. 1990).

that child, are deemed to be in the nature of support.  If the purpose of the underlying proceedings in which the award for attorney's fees arises is to provide for the benefit, support, or best interests of the litigants' minor children, then the awards are in the nature of support.

Georgia law makes it clear that a custody proceeding is about the best interests of the child.  O.C.G.A. § 19-9-(3)(a)(2) provides:

> The duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly.

Because an attorney's fee in a custody proceeding is necessarily incurred in pursuit of the child's best interest, it is "in the nature of support" under the general rule.

Ms. Sealock contends, however, that such fees cannot be a domestic support obligation unless the domestic court awards them based on the financial condition of the parties or if the court awards them as a sanction for misconduct in the proceeding.  The Court next considers the three cases on which Ms. Sealock primarily relies, the Eleventh Circuit's decision in *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444 (11th Cir. 1996) (Part III(C)), and two cases decided by Judge Baisier in this District, that have addressed awards of attorney's fees in a child custody proceeding (Part III(D)).

20

### C. The Eleventh Circuit's Ruling in *Strickland*

The Eleventh Circuit considered whether a debtor's obligation to pay attorney's fees arising out of a custody modification proceeding was "in the nature of" support in *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444 (11th Cir. 1996).[19]

In *Strickland*, the debtor sought a post-dissolution modification of custody and child support obligations.  The debtor lost and the Florida state court ordered the debtor to pay the former spouse's attorney fees.

The governing Florida statute provided that a former spouse is entitled to an award of attorney fees in a custody modification action based on relative need and ability to pay.  The Eleventh Circuit concluded, therefore, that the state court necessarily determined that the former spouse had a greater need and/or lesser ability to pay than the debtor.  As a result, the court ruled, the award of attorney fees could "legitimately be characterized as support," *Strickland*, 90 F.3d at 447 (quoting *Harrell v. Harrell (In re Harrell)*, 754 F.2d 902, 906 (11th Cir. 1985)).

In dicta, the *Strickland* court noted, "*In the absence of special circumstances showing otherwise from the record in the underlying*

---

[19] The *Strickland* court decided the case under 11 U.S.C. § 523(a)(5) as it existed prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  BAPCPA put the operative language of the § 523(a)(5) exception in a new definition of "domestic support obligation" in § 101(14A).  The amendment of the statute is not material to the *Strickland* court's analysis or ruling.  *See supra* note 14.

*proceedings*, the district court properly determined that the debt in this case is not dischargeable." *Strickland,* 90 F.3d at 447 (emphasis added).

The Georgia statutes governing an award of attorney's fees in a child custody action in Georgia are different from the Florida law that *Strickland* considered. Georgia has separate statutes governing the award of attorney's fees in child custody and child support proceedings depending on the type of proceeding.

O.C.G.A. § 19-6-2 applies "in an action for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights." It requires the court to "consider the financial circumstances of both parties as part of its determination of the amount of attorney's fees, if any, to be allowed against the other party." O.C.G.A. § 19-6-2(1).

Section 19-6-2 governs attorney's fees relating to child support and other issues in divorce and alimony proceedings, but it is inapplicable in a child custody dispute.[20]

---

[20] *Viskup v. Viskup*, 291 Ga. 103, 107, 727 S.E.2d 97, 101 (2012) ("OCGA § 19–6–2(a) is expressly limited to actions for alimony, for divorce and alimony, and for contempt of an order arising out of an action for alimony or divorce and alimony. It is not applicable to the case before us, which is a petition for modification of child custody; instead, OCGA § 19-9-3(g), which is applicable in an action seeking modification of child custody/visitation (see *Moore v. Moore–McKinney,* 297 Ga.App. 703(4), 678 S.E.2d 152 (2009)), applies.")

O.C.G.A. § 19-9-3(g) governs the award of attorney's fees in a child custody action when OC.G.A. § 19-6-2 is inapplicable, as in the custody proceeding here. Section 19-9-3(g) permits a judge in a child custody action to order "reasonable attorney's fees . . . to be paid by the parties in proportions and at times ordered by the judge." Thus, § 19-9-3(g) does not require consideration of the financial condition of the parties in awarding attorney's fees.[21]

The Superior Court required Ms. Sealock to pay $10,000 of Mr. Jackson's fees based on O.C.G.A. § 19-19-3(g). Because this statute does not require consideration of the financial positions of the parties, the issue here is different from *Strickland.*

The Court must determine whether *Strickland* requires that the absence of a requirement in Georgia law that the award of attorney's fees in a custody modification proceeding be based on the financial condition of the parties means that such an award cannot be "in the nature of" support unless the domestic court expressly considers their financial circumstances in making the award.

The holding of *Strickland* is that an award of attorney's fees is in the nature of support when the domestic court awards them based on the financial circumstances of the parties. It does not hold that state law must *require* such a determination. This follows from the established principle, as *Strickland*

---

[21] *Viskup v. Viskup*, 291 Ga. 103, 107, 727 S.E.2d 97 (2012).
　　　Another statute, O.C.G.A. § 19-6-15(k)(5), permits the court to award attorney's fees to the prevailing party in an action for modification of child support "as the interests of justice may require."

23

recognizes, that determination of whether an obligation is in the nature of

support is a question of bankruptcy law, not state law.[22]  Moreover, *Strickland*

does not hold that attorney's fees awarded in a custody proceeding can be a

domestic support obligation only if the domestic court awards them based on the

financial circumstances of the parties.

This reading of *Strickland* is consistent with the rulings in the two cases

in this District on which Ms. Sealock relies, to which the Court now turns.

**D.  Rulings in This District**

In *O'Brien v. Skubic (In re O'Brien),* 574 B.R. 369 (Bankr. N.D. Ga.

2017), a superior court had ordered the debtor, under O.C.G.A. § 19-9-3, to pay

the attorney's fees incurred by the father of their child in a legitimation and child

custody action that the father had commenced.  As just discussed, an award of

attorney's fees under O.C.G.A. § 19-9-3 does not require consideration of the

financial condition of the parties.

The superior court had stated in its order that, in making the award under

§ 19-9-3(g), it had considered the financial condition of the parties as well as the

submissions filed by each party, the pleadings, the evidence at the trial, the

outcome of the trial, the settlement offers made and the billing statements

submitted on the issue. 574 B.R. at 373.

---

[22] *E.g., Cummings. v. Cummings (In re Cummings),* 244 F.3d 1263, 1265 (11th Cir. 2001); *Strickland v. Shannon (In re Strickland),* 90 F.3d 444 (11th Cir. 1996); *Harrell v. Harrell (In re Harrell),* 754 F.2d 902, 904-05 (11th Cir. 1985).

The *O'Brien* court concluded that the fee order was ambiguous because it did not specify the weight given to the various factors and conducted a limited review to determine if the award was really in the nature of support. *Id.* at 377.

From the financial affidavits the parties had submitted in the domestic proceeding, the *O'Brien* court found that the parties had similar incomes, that the debtor had about $2,000 more in monthly expenses, and that the father had a net worth of $363,800 compared to the debtor's net worth of $96,000. The bankruptcy court also observed that the parties had incurred similar amounts of attorney's fees in the action – in excess of $100,000 each. *Id.* at 377-78.

The *O'Brien* court analyzed the nature of the fee award as follows, *id.* at 378:

> Although the Superior Court did recite that it considered the financial condition of the parties, it does not appear that ordering the Debtor, who has greater expenses and less assets than [the father] to pay a portion of [the father's] attorneys' fees could possibly have been based on the financial needs of [the father] or the minor child. Rather, as set forth in the First Order, the [Superior] Court also considered other things, including the submissions by the parties, the pleadings, the evidence at trial, the outcome of the trial, the settlement offers made and the billing statements submitted on this issue, and it appears that those matters, rather than any notion of support, resulted in the Fee Award.

25

Because the order was unclear as to how much consideration the superior court had given to the financial needs of the parties, and because O.C.G.A. § 19-9-3 does not require consideration of financial needs, the *O'Brien* court reasoned that it had to make its own determination as to whether the award was in the nature of support. 574 B.R. at 379.

The *O'Brien* court ruled that the award was not in the nature of support because it was primarily a sanction for the debtor's conduct in the litigation. The court explained, *id.* at 379:

> Based on this Court's own simple inquiry into what the Superior Court considered in making the Fee Award, it appears that the Superior Court must have given great weight to the other factors it mentioned, which would include the numerous instances of wrongful conduct by the Debtor asserted by [the father].

To summarize, *O'Brien* holds that an award of attorney's fees in a custody proceeding is not in the nature of support when it is a sanction for misconduct. *O'Brien* applied the established principle that labels do not control the issue of whether an obligation is in the nature of support. Thus, the superior court's recitations in the order that it had considered the financial condition of the parties could not control determination of the nature of the award. Because the financial circumstances of the parties indicated that the award could not possibly have been based on the financial needs of the debtor or the child, the

26

*O'Brien* court concluded that the fee award was a sanction for misconduct that was not in the nature of support.  *O'Brien,* 574 B.R. at 378.

Thus, *O'Brien* does not hold that an award is in the nature of support only if the domestic court considers the parties' financial condition.

The other case is *In re Mosely,* 577 B.R. 419 (Bankr. N.D. Ga. 2017).  It involved attorney's fees awarded against the debtor arising out of a generally unsuccessful action against the former spouse – the custodial parent – to modify their parenting rights set forth in the original divorce decree.  *Id.* at 422, 424.[23]

The fee order in *Mosely* did not state the statutory basis for its award. The *Mosely* court noted that O.C.G.A. § 19-6-2 (discussed in Part IV(C)), like the Florida statute in *Strickland,* provides for an award of attorney's fees in divorce and child custody cases based on the financial circumstances of the parties and that O.C.G.A. §§ 9-15-14 and 9-11-11permit an award of attorney's fees as a sanction for frivolous litigation.  *Id.*  at 426.  The *Mosely* court did not mention O.C.G.A. § 19-9-3(g).

The domestic court's order did not state that the court based its award on the financial condition of the parties, and the transcript did not indicate that the parties provided any financial information from which the domestic court could

---

[23] *Mosely* involved several awards of attorney's fees.  The award discussed here is the "$13,000 Fee Order."  Referencing its analysis of the $13,000 Fee Order, the *Mosely* court also believed that the attorney's fee awarded under the original divorce decree was not intended as alimony, support, or maintenance and, therefore, was not a domestic support obligation.  *Mosely,* 377 B.R. at 427 & n. 17.

27

have many any determination based on their financial condition.
"Consequently," the *Mosely* court concluded, "it is not clear how the Superior
Court could have complied with its statutory obligation to evaluate that
condition in making an award under O.C.G.A. § 19-6-2." *Id.* at 426.

Although the domestic court's order recited that the attorney's fees were
"deemed to be in the nature of support from [the debtor] to [the former spouse],
all as stipulated to, consented to, and agreed to by the parties herein, to be non-
dischargeable in bankruptcy," the *Mosely* court concluded that these recitations
were insufficient because "[t]he attorney's fees must actually constitute
support."  577 B.R. at 426.

The *Mosely* court ruled, 577 B.R. at 426-27:

In the absence of an express determination by the Superior Court that the
attorney's fees were awarded as support based on the relative financial
circumstances of the parties, this Court cannot find that they constitute
support based on the record in this case.

The *Mosely* court's footnotes to this part of its ruling provide further
explanation.

First, the *Mosely* court observed, "If a state court expressly states that it is
awarding attorney's fees under § 19-6-2 after consideration of the financial
condition of the parties, the simple inquiry of this Court is at an end.  It is only
in cases where it is not clear on what basis an award was made that further
inquiry might be appropriate."  577 B.R. at 427 n. 15.

28

Second, the *Mosely* court noted that the record before it contained no information about the financial circumstances of the debtor at the time of the attorney's fee award. *Id.* at 427 n. 16.

*Mosely* thus held that, because the domestic court had not considered financial circumstances and, therefore, its award could not have been based on § 19-6-2, it must be a sanction for misconduct under O.C.G.A. § 9-15-14 and § 9-11-11. As a sanction for misconduct, the award was not in the nature of support.

The *Mosely* court's reference to the need for an "express determination" that the domestic court awarded the fees as support based on financial circumstances explained the basis on which the court concluded that the award must be a sanction. It is not a holding that a domestic court must consider the parties' financial condition for an award of attorney's fees in a custody proceeding to be in the nature of support and, therefore, a domestic support obligation.

### E.  The Principles of *Strickland, O'Brien,* and *Mosely*

Taken together, the holdings in *Strickland, O'Brien* and *Mosely* stand for three principles with regard to the dischargeability under O.C.G.A. § 19-9-3(g) of an award of attorney's fees in a custody proceeding

First, an award of attorney's fees is not a domestic support obligation if the domestic court imposes it as a sanction for misconduct. This is consistent with *Strickland's* reasoning that attorney's fees based on ability to pay are

29

excepted from discharge "in the absence of special circumstances." *Strickland,* 90 F.3d at 447. And it is what both *O'Brien* and *Mosely* hold. Other courts have reached the same conclusion.[24]

Second, an award of attorney's fees is a domestic support obligation if it was based on the financial condition of the parties. This, of course, is precisely what *Strickland* holds, and both *O'Brien* and *Mosely* recognize the principle.

Third, the cases do not hold that an award of attorney's fees is a domestic support obligation only if the domestic court considers the financial condition of the parties.

Based on this analysis, the Court agrees with Ms. Sealock's conclusion that an award of attorney's fees in a custody proceeding as a sanction for misconduct is not in the nature of support and, therefore, that it is not a domestic support obligation. Part V(B) considers whether the Superior Court here awarded the fees as a sanction.

But this analysis does not answer the other issue Ms. Sealock presents: Whether an award of attorney's fees in a custody proceeding can be in the nature of support, and is therefore a domestic support obligation, in the absence of a

---

[24] *E.g., Curtis v. Curtis (In re Curtis),* 2021 WL 3878092 (Bankr. S.D. Iowa 2021); *In re Beasley,* 2019 WL 3403361 (Bankr. N.D. Ala. 2019); *Aldridge v. Millner (In re Millner),* 2015 WL. 1933408 at * 3 (Bankr. N.D. Ga. 2015); *Rackley v. Rackley (In re Rackley),* 502 B.R. 615, 625-26 (Bankr. N.D. Ga. 2013); *In re Spence,* 2009 WL 3483741 at * 3 (Bankr. S.D. Fla. 2009).

showing that the domestic court considered the parties' financial circumstances in awarding the fees. The Court thus turns to this question.

### F.  The Role of the Parties' Financial Condition in Determination of Whether an Award of Attorney's Fees in a Custody Modification Proceeding Is a Domestic Support Obligation

As Part III(B) explains, the general rule is that attorney's fees awarded in a custody proceeding are in the nature of support because determination of custody is essential to the welfare of the child.

The general rule does not address the issue here, which is whether a determination that such fees are in the nature of support requires a showing that the domestic court considered the financial circumstances of the parties in making the award. As the Court explains in Parts III(C) – (III)(E), *Strickland, O'Brien,* and *Mosely*, the cases on which Ms. Sealock relies, do not address it either.

The Fifth Circuit considered the question in *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 107 F.3d 355 (5th Cir. 1997). In *Hudson*, the domestic court ordered the debtor to pay child support and attorney's fees incurred in a paternity proceeding brought by the child's mother. The domestic court's judgment recited, in part, that the fees were "reasonable and necessary to protect and defend the rights of the child and to provide for the support of the child, and further attributable to the fraud and the intentional (or malicious) conduct of [the debtor] toward the child." *Id.* at 357.

The debtor argued that the mother had the financial ability to pursue the state court litigation and that, therefore, the award of fees was not necessary to enable her

to pursue child support.  As such, the debtor concluded, the fee award was not in the nature of support and was not excepted under § 523(a)(5).

The bankruptcy court granted summary judgment in favor of the law firm.  It concluded that the domestic court had determined the financial ability issue and that the domestic court's order had collateral estoppel effect in the dischargeability proceeding.  *Id.* at 358.  The district court affirmed.

On appeal to the Fifth Circuit, the debtor argued that the domestic court's order could not have collateral estoppel effect because the domestic court had not specifically addressed the mother's financial ability to pursue the litigation without an award of attorney's fees.  *Id.* at 358.

The Fifth Circuit did not address the collateral estoppel argument.  Instead, the court concluded that determination of dischargeability under § 523(a)(5) did not require proof of financial ability.  The court reasoned that the debtor's argument was inconsistent with its earlier decision in *Dvorak v. Carlson (In re Carlson),* 986 F.2d 940, 941 (5th Cir. 1993).  *Dvorak,* the court explained, held that "attorney's fees related to establishment of support obligations [are] non-dischargeable without reference to the financial need of the support obligee at the beginning of the litigation."  *Hudson,* 107 F.3d at 358.[25]  The obligation was, therefore, excepted from discharge.

---

[25] As the *Hudson* court stated, *Dvorak* concluded that fees awarded in a custody proceeding were excepted from discharge under § 523(a)(5) without regard to financial ability.  The *Dvorak* opinion, however, does not indicate that the parties raised the issue, and the court did not consider it.  The issue before *Dvorak* was whether fees awarded to a guardian ad litem

In this Court's judgment, the *Hudson* conclusion reflects the Eleventh Circuit's instructions to bankruptcy courts regarding determination of whether an obligation is in the nature of support.

The Eleventh Circuit in *Strickland* made it clear that the determination of whether an obligation is in the nature of support "requires nothing more than a 'simple inquiry as to whether the obligation can legitimately be characterized as support.'" *Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 447 (11th Cir. 1996) (quoting *Harrell v. Harrell (In re Harrell),* 754 F.2d 902, 906 (11th Cir. 1985). Moreover, the court cautioned, any attempt to expand the issue of whether a debt is in the nature of support into an ongoing assessment of the parties' financial circumstances would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts.'" *Id.* (quoting *Harrell,* 754 F.2d at 407).

The simple inquiry is whether an award of attorney's fees in a custody proceeding can legitimately be characterized as support. Whether and to what extent the domestic court considered the parties' financial circumstances may inform that decision. It may end the inquiry if the domestic court did consider them.

---

and the former spouse's attorneys in a custody modification proceeding were in the nature of support. The *Dvorak* court agreed with the bankruptcy court and the district court that the fees were not excepted from discharge under § 523(a)(5) because the custody proceeding was for the benefit and support of the child because its purpose was to determine who could provide the best home for the child. *Dvorak v. Carlson (In re Carlson),* 986 F.2d 940 (5th Cir. 1993).

But the fact that the domestic court's consideration of financial circumstances may inform the dischargeability determination does not translate into a rule that requires a showing of such consideration to establish that an award of attorney's fees in a custody proceeding is in the nature of support.

Such a rule would effectively create a presumption that the domestic court did not take financial circumstances into account unless it expressly did so. This Court will not assume that judges in custody matters do not take financial circumstances into account in awarding attorney's fees in a custody modification proceeding in which their primary duty is to determine the best interests of the child, O.C.G.A. § 19-9-3(a)(2), even if written orders or transcripts of proceedings do not contain express findings to that effect.

This Court concludes as a matter of law that it is not necessary to show that the domestic court considered the parties' financial circumstances in awarding fees in a custody proceeding to establish that the award is in the nature of support and, therefore, a domestic support obligation.

Some courts have recognized the possibility of an exception to the general rule that an award of attorney's fees in a custody proceeding is in the nature of support in "unusual,"[26] or "special"[27] circumstances.

---

[26] *E.g., Jones v. Jones (In re Jones),* 9 F.3d 878, 881 (10th Cir. 1993).

[27] *E.g., Holtz v. Poe (In re Poe),* 118 B.R. 809, 812 (Bankr. N.D. Okla. 1990).

The Tenth Circuit applied an "unusual circumstances" exception to nondischargeability in *Lowther v. Lowther (In re Lowther),* 321 F.3d 946 (10th Cir. 2002), based on the financial situation of the parties.

The *Lowther* court reasoned that "the type of unusual circumstances most likely to warrant exception are those where discharge [of the attorney's fee award] is in the best interests of the child." *Id.* at 949. Because requiring the debtor – the custodial parent – to pay the attorney's fees arising out of a custody dispute would adversely affect her ability to support the child, the court concluded that the unusual circumstances warranted "a narrow exception to dischargeability." *Id.*

The court in *Benjamin v. Douglas (In re Douglas),* 330 B.R. 245 (Bankr. S.D. Cal. 2005), rejected the *Lowther* analysis. The court reasoned that nothing in the statutory language supported an "unusual circumstances" exception and noted that the only question is whether an obligation is in the nature of support, not the effect of a dischargeability determination on the debtor or the debtor's dependents. *Id.* at 250-51. S*ee also Sonntag v. Prax (In re Sonntag),* 2004 WL 764728 (N.D. Tex. 2004), *aff'd* 115 Fed.Appx. 680 (5th Cir. 2004) (predicting that the Fifth Circuit would not follow *Lowther* and finding no basis for applying it); *Hutton v. Ferguson (In re Hutton),* 463 B.R. 819 (Bankr. W.D. Tex. 2011) (same).

Without discussing the availability of the *Lowther* exception, the Seventh Circuit in *Trentadue v. Gay (In re Trentadue),* 837 F.3d 743, 752 (7th Cir. 2016), affirmed the bankruptcy court's determination that no basis for the exception existed. The Fifth Circuit in *Rogers v. Morin (In re Rogers),* 189 Fed.Appx. 299, 304 (5th Cir.

2006), declined to decide whether to follow *Lowther* because the debtor had "failed to identify in the record specific facts of actual hardship to [the child] to support her special circumstances argument."

The Eleventh Circuit has not considered the *Lowther* ruling.  The Eleventh Circuit noted, however, in *Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 447 (11th Cir. 1996), that an award of attorney's fees in a custody proceeding based on ability to pay is in the nature of support "[i]n the absence of special circumstances showing otherwise from the record in the underlying proceedings."  *Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 447 (11th Cir. 1996).

Part V(A) considers whether a "special circumstances" exception applies here.

## V.  ANALYSIS OF WHETHER THE SUPERIOR COURT'S AWARD OF ATTORNEY'S FEES IS "IN THE NATURE OF" SUPPORT

The Court now applies the legal principles discussed above to the facts in this proceeding.

Mr. Jackson's fees were awarded in a proceeding that involved the fundamental issue of the welfare of the parties' minor child:  the child's custody. Under the general rule that fees incurred on behalf of a child during a proceeding that affects a minor child are in the nature of support, it follows that the fees are a domestic support obligation within the definition of § 101(14A).

As Part IV(F) concludes, it does not matter that the Superior Court did not expressly consider the financial condition of the parties in making the award.[28]  This

---

[28] This Court observes that the record may provide a basis for a determination that the Superior Court did consider financial circumstances.

36

Court's task under *Strickland* is to conduct a "simple inquiry" to determine "'whether the obligation can legitimately be characterized as support.'" *Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 447 (11th Cir. 1996) (quoting *Harrell v. Harrell (In re Harrell),* 754 F.2d 902, 906 (11th Cir. 1985).

Under the general rule, the award is easily characterized as a support obligation unless unusual or special circumstances require a different classification or unless the Superior Court imposed the attorney's fees as a sanction for Ms. Sealock's misconduct.

## A. Whether Unusual or Special Circumstances Exist

As Part IV(F) discusses, the Tenth Circuit applied an "unusual circumstances" exception to nondischargeability in *Lowther v. Lowther (In re Lowther),* 321 F.3d

---

The judge received evidence about the income and expenses of the parties (Tr. 3-8; 9-14) and considered it in the determination of child support. (Tr. 37-38). Mr. Jackson explained the burden of attorney's fees on Mr. Adams (Tr. 19), and Mr. Jones urged the court to take Ms. Sealock's financial situation into account in awarding attorney's fees. (Tr. 21-22).

With this evidence and argument before her, the judge may well have had the parties' financial circumstances in mind when she allocated a portion of Mr. Jackson's fees to Ms. Sealock rather than all of them. After all, no other principled reason appears to exist to reduce a party's responsibility for the fees that the party's conduct created.

If the outcome in this case depended on whether the judge considered financial circumstances (and the outcome does not for the reasons stated in the text), the Court would consider whether the best way to determine if the judge did so would be to lift the automatic stay to permit the parties to proceed in the Superior Court to request that the judge herself provide the answer in accordance with the procedure the Eleventh Circuit ordered in *Cummings v. Cummings (In re Cummings)*, 244 F.3d 1263, 1265 (11th Cir. 2001) (remanding to the bankruptcy court to permit spouse to seek relief from the automatic stay to permit domestic court to determine whether obligation labelled as a property settlement was intended to function as support). *See also Cummings v. Cummings,* 277 Fed.Appx. 946 (11th Cir. 2008) (affirming determination that portions of the obligations were in the nature of support based on domestic court's ruling after stay relief).

946, 948 (10th Cir. 2002), "where discharge [of the attorney's fee award] is in the best interests of the child."  *Id.* at 948.  The Eleventh Circuit in *Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 447 (11th Cir. 1996), stated that special circumstances may exist that permit an exception to the general rule that attorney's fees awarded in a custody proceeding are not dischargeable.

As the Tenth Circuit explained in *Lowther,* the "unusual circumstances" exception is "very narrow."  *Lowther v. Lowther (In re Lowther),* 321 F.3d 946, 948-49 (10th Cir. 2002).  Accordingly, as the Fifth Circuit ruled in *Rogers v. Morin (In re Rogers),* 189 Fed.Appx. 299, 304 (5th Cir. 2006), a debtor seeking to invoke the unusual circumstances exception must identify specific facts in the record that show actual hardship to the child.

This Court need not decide whether an "unusual" or "special" circumstances exception to the general rule exists.  Nothing in the record before the Superior Court or this Court establishes any basis for application of such an exception to the award here.

Ms. Sealock has filed a Chapter 13 plan that proposes to pay the attorney's fees in full if they are entitled to priority under § 507(a)(1).[29]  Nothing indicates that the award of attorney's fees harmed the child beyond the obvious fact that it would be easier for Ms. Sealock to pay child support and otherwise provide benefits to the child

---

[29] 20-41137 Doc. No. 40, §§ 4.4, 8.1.

if she did not have to pay the attorney's fees. This common problem does not warrant invocation of an unusual or special circumstances objection.

## B. Whether the Award of Attorney's Fees is a Sanction

The Final Order awarded the fees under O.C.G.A. § 19-9-3(g) "based on the conduct" of Ms. Sealock in the case. Although this Court discounts the written order as a definitive statement of the basis for the ruling because the attorneys prepared and approved its form, it is consistent with the judge's oral announcement at the Final Hearing. Nevertheless, based on this Court's examination of the award in the context of the judge's oral ruling, the Court concludes that the judge did not award the attorney's fees as a sanction or to punish Ms. Sealock for her conduct.

The judge at the final hearing noted that Ms. Sealock had made "bad decisions" and that her conduct "sure did make a mess in the case." Immediately after this observation, the judge said, "*And so* under § 19-9-3(g) I will award attorney's fees to Mr. Jackson in the amount of $ 10,000." (Tr. 40) (Emphasis added).

The Final Order and the judge's ruling at the Final Hearing thus make a causal connection between Ms. Sealock's conduct and the award of fees. But the causal connection does not establish the *purpose* of awarding them.

The purpose of the award is critical to determining its nature.[30]

Sanctioning a party – the imposition of punishment – may have little, if

anything, to do with the welfare of the minor child.  On the other hand,

allocating the expenses of remedying the damage caused by the misconduct –

the remedy being necessary for the child's welfare – adjusts the burden between

the parties in a manner that the domestic court deems appropriate.

The general rule that attorney's fees in a custody proceeding are in the

nature of support rests on the principle that custody and child support

determinations are essential to the welfare of the child.  As a consequence, the

expenses of that determination constitute support.  An allocation of that burden

between the parties comes squarely within the general rule; such an adjustment

cannot fall within any exception.

It is clear to this Court from a review of the custody proceedings that the

judge carefully allocated the burden of the attorney's fees between Ms. Sealock

and Mr. Adams and that the award was not a sanction that was punitive in

nature.

During the course of the proceeding, the judge twice stated that she did

not want to set up people to fail – once in the context of the ruling on child

support and again in the discussion of attorney's fees.  (Tr. 38, lines 19-22; 39,

---

[30] *E.g., Cummings v. Cummings (In re Cummings),* 244 F.3d 1263, 1266 (11th Cir.2001); *see
Satterfield-Price v. Parrish (In re Satterfield-Price),* 2014 WL 1117994 at * 6 (M.D. Fla.
2014).  *See also Trentadue v. Gay (In re Trentadue*), 837 F.3d 743, 751-52 (7th Cir. 2016).

lines 13-15).  Imposing a sanction or punishment, as opposed to appropriately

adjusting the burden of the fees, is inconsistent with this objective.

Further, the judge described Ms. Sealock's conduct as "bad decisions"

that were "unfortunate," and stated that – as she had told the child in chambers –

"sometimes people make bad decisions actually out of love for the child.  They

don't realize what they're doing is wrong and how big of a mess they're making

at the time."  (Tr. 40, lines 7-12).  The judge did not like what Ms. Sealock had

done, but she understood it rather than condemned it.  This description of the

conduct does not indicate a punitive objective.

All of this – especially in the context of the judge's encouragement to the

parties at the outset of the proceeding to put the past behind them and get along

for the best interests of the child (Tr. 24 line l25 – 25 line 12)– establishes that

the judge allocated a portion of Mr. Jackson's fees to Ms. Sealock as an

appropriate adjustment of the burden of support based on all the circumstances

of the case.  They demonstrate that the judge awarded the fees because Ms.

Sealock's conduct had made them necessary, not to sanction or punish her for

what she did.

It is noteworthy that the Superior Court did not order Ms. Sealock to pay

*all* of the attorney's fees or the entire guardian ad litem fee.  A sanction or

punishment for making a "mess," presumably, would require the responsible

party to pay all of the fees incurred to clean it up.  An *allocation* of the fees, on

41

the other hand, reflects an evaluation of *how much* each party should pay, based on all the circumstances of the case.

For these reasons, it is clear to this Court that the judge awarded the fees as a matter of allocating the burden of the custody proceeding that was necessary for the child's welfare. As such, the fees are "in the nature of" support within the definition of a domestic support obligation in § 101(14A).[31]

## VI. CONCLUSION

Because the award of attorney's fees is "in the nature of" support, it is a "domestic support obligation" within the definition of 11 U.S.C.§ 101(14A). As such, the claim for attorney's fees is entitled to priority under 11 U.S.C. § 507(a)(1), and it is excepted from discharge under 11 U.S.C. § 523(a)(5). The Court will, therefore, grant Mr. Jackson's motion for summary judgment and deny Ms. Sealock's motion for summary judgment. The court will enter judgment in the adversary proceeding in favor of Mr. Jackson and overrule Ms. Sealock's objection to the priority of the law firm's proof of claim.

Elinor Portivent, the guardian ad litem, has not been served in the adversary proceeding. If Ms. Sealock wants a determination that her debt to Ms.

---

[31] The Court notes that its conclusions are consistent with the results in *O'Brien v. Skubic (In re O'Brien),* 574 B.R. 369 (Bankr. N.D. Ga. 2017), and *Mosely v. Mosely (In re Mosely),* 577 B.R. 419 (Bankr. N.D. Ga. 2017), discussed in Part III(D). Both held that attorney's fees in a custody proceeding were dischargeable because they were awarded as a sanction for misconduct. The difference between those rulings and this one is that the record in this case establishes that the award was not a sanction.

Sealock is not excepted from discharge, she must serve Ms. Portivent within seven days from the date of this Order.  In the absence of timely service, the Court will dismiss the complaint against Ms. Portivent.

Because the Court has determined all of the issues between Ms. Sealock and Mr. Jackson in the adversary proceeding, it is appropriate that the Court enter final judgment as to Mr. Jackson in the adversary proceeding even though the claims against Ms. Portivent remain.  Finality is important for purposes of administration of Ms. Sealock's Chapter 13 case, and no reason exists for the adversary proceeding to continue against Mr. Jackson.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, *applicable under* Rule 7054(a) of the Federal Rules of Bankruptcy Procedure, therefore, the Court hereby determines that there is no just reason for delay in the entry of final judgment in Mr. Jackson's favor in the adversary proceeding and will enter final judgment in the adversary proceeding determining that the debt is excepted from discharge under § 523(a)(5).  The Court will enter one final judgment disposing of both the adversary proceeding against Mr. Jackson and the objection to his law firm's proof of claim.

It is, therefore, hereby **ORDERED and ADJUDGED** as follows:

1.  Mr. Jackson's motion for summary judgment (No. 20-2024 Doc. No. 6) is **Granted.**

2.  Ms. Sealock's motion for summary judgment (No. 20-2024, Doc. No. 5) is **Denied.**

43

3.  Ms. Sealock's objection to Claim No. 15 of Mr. Jackson's law firm, McRae, Smith, Peak, Harman & Monroe, LLP (20-41337, Doc. No. 20), is **Overruled,** and the claim is **Allowed** as a claim entitled to priority under 11 U.S.C. § 507(a)(1)**.**

4.  The Court will enter a Final Judgment in Adversary Proceeding No. 20-4024 and on the objection to the proof of claim in Case No. 20-41137 in accordance with the foregoing rulings.

5.  The Court directs the Clerk to issue a new summons in this proceeding for Ms. Portivent.  If Ms. Sealock fails to serve Ms. Sealock with summons and a copy of the complaint in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure within seven days from the date of entry of this Order and fails to file a certificate of such service within such time, the Court will dismiss the adversary proceeding, without prejudice, without further notice and without a hearing.

6.  The Court directs the Court to file a copy of this Order in Ms. Sealock's Chapter 13 case, No. 20-41337.

**[End of Order]**

**Distribution List**

W. Jeremy Salter
Salter Law Group, LLC
P.O. Box 609
Rome, GA  30162

Christopher R. Jackson
McRae, Smith, Peak, Harman & Monroe LLP
P.O. Box 29
Rome, GA 30162

Brian Richard Bojo
McRae, Smith, Peak, Harman & Monroe LLP
P.O. Box 29
Rome, GA 30162

Brandi L. Kirkland
285 Peachtree Center Ave., Ste. 1600
Atlanta, GA 30303

Elinor H. Portivent
P.O. Box 2108
Calhoun, GA 30703